**SIGNED THIS: November 02, 2005**

```
                    _____
                         LARRY LESSEN
                    UNITED STATES BANKRUPTCY JUDGE
```
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| HEALTH MANAGEMENT | ) | |
| LIMITED PARTNERSHIP, | ) | Case No. 03-71681 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| UNIVERSAL GUARANTY LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-7095 |
| | ) | |
| HEALTH RECEIVABLES | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# O P I N I O N

The issue before the Court is whether a collection company may

-1-

continue to collect the debtor's accounts receivable pursuant to a pre-petition contract which the debtor rejected the day after filing its bankruptcy petition.

The parties have stipulated to the material facts: The Debtor, Health Management Limited Partnership, operated a hospital facility in Springfield, Illinois known as "Doctors Hospital". The Plaintiff, Universal Guaranty Life Insurance Company, holds the first priority security interest in the Debtor's accounts receivable. The Defendant, Health Receivables Management, Inc., is a New York corporation which collects medical accounts receivable and does business in Illinois as Progressive Recovery Techniques.

On January 18, 2002, the Debtor and the Defendant entered into a written "Agreement for Collection of Unpaid Accounts". Pursuant to the Agreement, the Defendant agreed to collect accounts receivable placed with it and to remit the full amount of all monies collected on a monthly basis to the Debtor, less a collection commission. The Debtor agreed to pay the Defendant a 20% contingency fee on accounts collected without litigation and 28% on accounts involving litigation. In the event that the Debtor did not pay the Defendant, the Agreement provided that the Defendant had a right to set off any amounts owed to it by the Debtor that were over 30 days past due from the amounts payable by the Defendant to the Debtor. The Agreement was for a three-year period and provided for automatic extensions of one year if neither

party terminated the Agreement by advance notice prior to the end of the current extension.  Upon termination of the Agreement, the Defendant had 60 days to complete its receivables work.

The Debtor filed its petition pursuant to Chapter 11 of the Bankruptcy Code on April 2, 2002.

While the Agreement allowed the Defendant to deduct its commissions from the monthly checks that it sent to the Debtor, the actual practice was for the Defendant to send the full amount of its collections to the Debtor and then to send a bill for the commissions earned.  Thus, the Debtor owed the Defendant a significant amount for previous month's commissions when the Debtor filed its Chapter 11 petition.

On April 3, 2003, the Debtor sent a letter to the Defendant canceling its collection services.  The Defendant refused to accept the cancellation.  On April 23, 2003, the Defendant sent a letter to the Debtor asserting that, under the Agreement, it had the right to continue its collection services for 60 days and that it was setting off amounts due the Debtor against invoices which were more than 60 days past due.

For the months of March, 2003, through September, 2003, the Defendant collected $46,240.02 of the Debtor's accounts receivable. The Defendant did not pay any of these proceeds to the Debtor.  The Defendant's invoices were dated at the end of the month and received by the Debtor at the beginning of the next month.  The

following chart shows the amount withheld by the Defendant each month and the application of the funds:

| Month invoice received by debtor | Amount withheld | Amount applied to prior month's fee | Balance withheld | Applied to: |
|---|---|---|---|---|
| April 2003 | $15,043.88 | $ 3,657.01 | $11,386.87 | October 2002 legal fees reimbursement & October 2002 contingent fee |
| May 2003 | $ 6,502.50 | $   793.45 | $ 5,709.05 | October 2002 |
| June 2003 | $15,224.21 | $ 4,884.09 | $10,340.12 | October 2002 & November 2002 |
| July 2003 | $ 2,637.46 | $   862.80 | $ 1,774.66 | November 2002 |
| August 2003 | $ 6,656.97 | $ 1,633.22 | $ 5,023.75 | November 2002 & December 2002 |
| September 2003 | $   175.00 | $    35.00 | $   140.00 | December 2002 |
| **Total** | **$46,240.02** | **$11,865.57** | **$34,374.45** | |

The Debtor closed the hospital facility at the end of April, 2003.  The Debtor's liquidating Chapter 11 plan was confirmed on May 17, 2004.  At no time up to or during the confirmation process did the Debtor assume or attempt to assume the contract with the Defendant.  Moreover, the Debtor did not rescind its letter sent a day after the bankruptcy filing notifying the Defendant that its contract was canceled.

An executory contract is one under which the obligations of both the debtor and the other party remain so far unperformed that failure of either to complete performance would constitute a material breach excusing performance by the other.  In re Leefers, 101 B.R. 24, 25-26 (C.D. Ill. 1989).  The January 18, 2002, Agreement for the Collection of Unpaid Accounts falls within the

definition of an executory contract. The initial term of the agreement was for 36 months. The Agreement had about 21 months remaining when the Debtor filed the Chapter 11 petition and canceled the contract the next day.

The Defendant argues that it had certain contractual rights which it was entitled to exercise even though the agreement had been rejected. This argument would have merit absent the filing of the bankruptcy petition. However, the filing of the bankruptcy petition changed everything. The post-petition rejection of an executory contract is treated as a breach of the contract, which breach is deemed to have occurred immediately before the date of the filing of the petition. 11 U.S.C. § 365(g)(1). The non-debtor party has a pre-petition general unsecured claim for breach of contract damages. 11 U.S.C. § 502(g). Thus, the Defendant's remedy for the Debtor's breach of the agreement was not to continue collecting accounts receivable but rather to file a claim in the bankruptcy case.

The Defendant asserts that it has a right of setoff which is superior to the rights of the Plaintiff. 11 U.S.C. § 553 allows a creditor to offset certain mutual debts in a bankruptcy proceeding. In effect, setoff elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. In re Cooks, 157 B.R. 385, 388 (Bankr. S.D. Ohio 1993). Mutuality of claims means that the claims are asserted

against the same entity in the same capacity; the mutual claims need not arise in the same transaction. Accordingly, the availability of setoff turns on whether the claims of the creditor and the debtor both arose pre-petition or both arose post-petition; a creditor may not set off a pre-petition claim against a post-petition obligation. In re Calstar, Inc., 159 B.R. 247 (Bankr. D. Minn. 1993).

The Plaintiff concedes that the Defendant was holding $15,043.88 as of March 31, 2003, from the March collections and that the Defendant was entitled to take its contingent fee ($3,657.01) and set off $11,386.87 against the sums owed to it by the Debtor. This was a permissible setoff of mutual pre-petition obligations. As to the remaining $22,987.58 which it applied to debts owed by the Debtor to the Defendant from October, 2002, through December, 2002, this was clearly an impermissible setoff of a pre-petition claim against a post-petition obligation.

The Defendant asserts that it is entitled to the $8,208.56 that it earned for its collection work from April, 2003, through September, 2003. There is no basis for this claim. The bankruptcy was filed on April 2, 2003, and the Defendant was fired the next day. The Defendant was never hired by the bankruptcy estate to collect accounts receivable. The Defendant acted strictly as a volunteer when it chose to continue collecting accounts receivable. The Defendant's motivation was not to benefit the bankruptcy estate

- none of these funds made it to the bankruptcy estate - but rather to pay off the debt owed to it by the Debtor.  A creditor cannot expect to ignore the explicit instructions of the Debtor and the provisions of the Bankruptcy Code and expect to get paid for work which does not benefit the bankruptcy estate.

For the foregoing reasons, judgment is entered in favor of the Plaintiff and against the Defendant in the amount of $31,196.14.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###

-1-